# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

|                                   |     |                               |
|-----------------------------------|-----|-------------------------------|
| SE PROPERTY HOLDINGS, LLC,        | )   |                               |
|                                   | )   |                               |
|     Plaintiff,| )   |                               |
|                                   | )   |                               |
| v.                                | )   | CIVIL ACTION 11-0014-WS-C     |
|                                   | )   |                               |
| THE ROOKERY, LLC, et al.,         | )   |                               |
|                                   | )   |                               |
|     Defendants.| )  |                               |

## ORDER

The plaintiff has filed a motion for show cause order against defendant Richard Vail. (Doc. 166). Vail has filed a response and the plaintiff a reply. (Doc. 171, 173). The plaintiff asks the Court to hold Vail in contempt for violating a charging order entered in January 2013 that imposed a lien on Vail Construction, LLC ("Construction") and required Construction "to distribute to the plaintiff any amounts that become due or distributable to Vail by reason of any interest he owns in" Construction. (Doc. 69). The plaintiff asserts that Vail is the sole member of Construction, (Doc. 166 at 1), such that any violation of the charging order is Vail's violation, for which he may be held in contempt of court.

The plaintiff asserts that Vail has:

(a) Withdrawn funds from Construction's bank accounts for personal expenses;

(b) Used Construction funds to make payments on a loan taken out by Vail and his ex-wife in their personal capacities and secured by their real property on Kennedy Road;

(c) Used Construction funds to make payments on a loan taken out by Vail to purchase a boat;

(d) Used Construction funds to make payments on a personal loan secured by a mortgage on Vail's residence (the "Pinewood Drive property");

(e) Used Construction funds to make court-ordered payments to his ex-wife in connection with his divorce;

(f) Used Construction funds to purchase real property (the "Whitt property") used by Vail's son and grandchildren as a residence;

(g) Used Construction funds to purchase other real property (the "Russell property");

(h) Used Construction funds to make payments to an LLC ("RMV") in which he has a large interest;

(i) Written checks on the Construction bank account for personal expenses; and

(j) Deposited into his personal account checks paying for construction services or materials.

(Doc. 166 at 2-6). The plaintiff relies on almost 300 pages of exhibits, (Doc. 166-6 to -24), which clearly support the proposition that transfers from Construction to Vail and to third parties occurred but which do not clearly establish that any of the transactions constitute "distributions" to Vail in violation of the charging order.

In opposition to the motion, Vail has filed a brief and his affidavit. (Doc. 171). Because the brief essentially parrots the affidavit, the Court focuses on the latter. Vail responds essentially as follows:

(a) The withdrawn funds were used to cover the cost of goods sold, material expenses, equipment fuel, crew lunches, vehicles and rental equipment;

(b) The proceeds of the loan were used to purchase a piece of equipment for Construction;

(c) The proceeds of the loan were used to purchase a pontoon boat used by Construction to construct piers;

(d) The loan proceeds were used to purchase the Pinewood Drive property, with the land and all but one room and one bathroom in the building used exclusively by Construction;

(e) The payments to Vail's ex-wife were for her share of the Pinewood Drive property;

(f) The Whitt property is not being used by family members as a residence but by Construction for storage;

(g) The Russell property belongs to Vail's ex-wife pursuant to the divorce decree, but Vail remains on the vendor's lien deed; when she stopped making payments, Russell agreed for Construction to assume the mortgage and pick up the payments;

(h) The payments to RMV (from which Vail withdrew in early 2016) were on ownership of a piece of potential development property;

(i) The checks on the Construction bank account were for expenses of the business; and

(j) No response.

(Doc 171 at 7-9).

In its reply, the plaintiff principally objects that Vail relies on his sworn testimony without presenting any supporting documentation to corroborate his version of the facts. (Doc. 173). The plaintiff, however, offers no authority for the facially doubtful proposition that Vail "must rebut with evidence of business records to support this defense, not self-serving affidavit testimony with zero documentation in support." (Doc. 173 at 1).[1] The same flaw infects the plaintiff's motion to strike Vail's affidavit based on an unexplained invocation of "best evidence" and "hearsay." (Doc. 174). The Court has no obligation to conduct the research necessary to support a party's conclusory position, and it declines to do so.

---

[1] Nor has the plaintiff explained its facially dubious assumption that controverting the allegations of its motion constitutes a "defense."

Vail's responses to (a), (b), (c), (d) and (i) directly contradict, with explanation, the plaintiff's assertion that the transfers constituted distributions in violation of the charging order. His other responses are more equivocal, but the Court does not find them to clearly establish a violation of the charging order:

(e) For all that the record shows, the Pinewood Drive property was purchased exclusively as a residence but was converted by Vail to almost totally business property after his 2011 divorce, which might justify Construction making the payments to Vail's ex-wife for her share of the property;

(f) The plaintiff focuses on Vail's admission that his son and grandchildren occupied the Whitt property in June 2016. (Doc. 152 at 2.) The plaintiff has no evidence, however, that they lived there at any other point in time; nor does the plaintiff have evidence that the situation on the Whitt property was any different from that on the Pinewood Drive property – used almost exclusively by Construction for business purposes, which might justify the LLC making payments on the vendor's lien deed;

(g) The plaintiff stresses that Vail does not identify any business purpose of the Russell property, which is correct but which does not establish that there is no such purpose;

(h) Vail's response is so obscure that the Court cannot determine whether Construction had a business or investment interest in the potential development property and therefore cannot conclude there was no such interest; and

(j) Vail's failure to respond leaves open plausible explanations for the deposits (such as repayment of advances) as well as the possibility the funds were later transferred to Construction, none of which scenarios are addressed by the plaintiff.

In addition, the Court notes that the plaintiff concedes it must present clear and convincing evidence of a violation before any burden shifts to Vail to present anything at all. (Doc. 166 at 6).[2] Because, as noted above, the plaintiff's evidence does not meet that demanding standard, Vail has no burden to explain his conduct and cannot be faulted for any failure to do so.

It appears to the Court that the plaintiff filed the instant motion prematurely. Default judgment was entered against Vail in September 2011, (Doc. 49), and the plaintiff has had over six years to invoke the process of post-judgment discovery to identify assets and uncover evidence that Vail is improperly avoiding payment on the judgment. A brief review of the docket sheet reveals that the plaintiff has repeatedly invoked these procedures. (Docs. 88, 92, 93, 104, 108, 123, 128, 130, 157-61, 165). The plaintiff has not explained why it cannot now invoke those same procedures to obtain additional written discovery, Vail's deposition testimony, and/or any other evidence needed to elevate its suspicion of wrongdoing into clear and convincing evidence of same.

For the reasons set forth above, the plaintiff's motion to strike and motion for show cause order are **denied**.


DONE and ORDERED this 13th day of April, 2018.


s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[2] *E.g., Commodity Futures Trading Commission v. Wellington Precious Metals, Inc.*, 950 F.2d 1525, 1529 (11th Cir. 1992).